· J. FOWBLE v. WM. RAYBERG AND WM. W. TAYLOR.

Previous to the act of February, 1824, where a sheriff in office had levied a *fia. fa.* upon land, a *vendi.* might issue to the same person after his office expired, and a sale made by him would be valid.

A return, made on a *vendi.* by the late sheriff, to December, 1810, that he had sold certain lands previously levied on, was, in December term, 1812, the sheriff making the return being deceased, on motion of his representatives, ordered to be so amended as to state that the property remained on hand for want of bidders. At February term, 1828, this order of amendment was rescinded, on motion of the purchaser at the first sale, and an order made that the sheriff make a deed. Proceeding held regular.

When a sale of land has been made by a former sheriff, the deed is to be made by the sheriff in office at the time of the application.

CERTIORARI to the court of common pleas in Hamilton county.

On September 5, 1810, an *alias* or *pluries venditioni exponas* issued from the court of common pleas of Hamilton county, directed to Aaron Goforth, late sheriff of Hamilton county, at the suit of Rayberg and Taylor *v.* Fowble, returnable to the December term, 1810, of said court of common pleas. The *vendi.* was returned *with the following indorsement: "Received this execution September 5, 1810. On December 8, 1810, I sold the within-described land to Christopher Walker, and have made the money. Aaron Goforth, late sheriff."

On March 1, 1828, during the February term, Fowble, by his counsel, moved the court of common pleas to set aside this execution, and all subsequent proceedings thereon. Upon the hearing of this motion, the following facts were proven or admitted, as appears from a bill of exceptions annexed to and made part of the record. It was proved that on September 21, 1808, Rayberg and Taylor recovered a judgment in the Supreme Court against Fowble, for one thousand one hundred and fifty-five dollars and fifty-three cents damages, eight dollars and seventy-one cents costs, in the court of common pleas, and eleven dollars and twenty-nine cents costs in the Supreme Court, which judgment was certified to the court of common pleas for execution. It was further proven, that prior to September 5, 1810, several executions had issued upon this judgment directed to Goforth while sheriff of Hamilton county. That, on September 21, 1808, a writ of *fi. fa.* was issued, thus directed and returnable to the December term of that year. This writ was returned with the following indorsement made by the sheriff: "I have levied upon one hundred and six and one-third acres of land in the northeast corner of section 25, of township 3, and fractional range 2; also, ninety-four and three-fourths acres in section 25, township 3, and fractional range 2, which remains unsold." This land was subsequently sold under the *vendi.* of September 5, 1810. It was further proved, that on May 1, 1809, a *vendi.* was issued, upon which the sheriff made the following return: "I have held inquiry, and property of the annual rent of four hundred and fifty-four dollars and sixty-two and two-third cents, and of the value of four thousand four hundred and twenty-six dollars and sixty-two and two-third cents, as appraised by inquisition hereunto annexed." It was admitted that Goforth went out of office on April 7, 1809, and had not been sheriff since; and it was proved that on December 8, 1810, he was a member of the senate of the state, soon after

which he died. Previous to his death, no deed was made to Walker conveying the property sold. It was further proved, that at the December term, 1812, of the court of common pleas, on the applica-cation of William Corry, one of the administrators of the late sheriff Goforth, it was ordered that the return made on *December 8, [47 1810, to the *vendi.* of September 5th, be amended, and that the return should be "property on hand for want of bidders." In pursuance of this order, the following amended return was caused, on May 8, 1813, to be entered on the same execution : "By virtue of an order of the court of common pleas for December term, 1812, on hearing the representatives of the late sheriff, to amend the said return by returning property on hand for want of bidders, the same is hereby amended accordingly." Subsequent to the amended return, another *vendi.* issued, returnable to the August term, 1813, but on this ex-ecution no return had been made. It was further proved, that on February 26, 1828, the amended return so made by William Corry, was, on motion of Christopher Walker, ordered by the court of common pleas to be set aside, vacated, and held for naught, the re-turn originally made by the late sheriff reinstated, and that a deed be made to Walker for the land, agreeable to the return made by Goforth on December 8, 1810, it being proven that the purchase money had been paid but no deed made. It was also proved that previous to the act of 1824, " defining the duties of sheriffs, etc., in certain cases," it had been the invariable practice of the court of common pleas in Hamilton county to direct executions to the per-son, as late sheriff, who had been sheriff, and who had commenced proceedings by levy, etc., but had not finished before the term of office expired. The court of common pleas, after a full hearing, refused to set aside the execution, and overruled the motion of Fowble.

The case now comes before this court upon a supposed error of the court of common pleas in overruling this motion. The errors assigned are in substance :

That the execution was improperly directed, being directed to the late sheriff, whereas it should have been directed to the present sheriff.

That the amended return was improperly set aside and va-cated.

That the deed was improperly ordered, after the intervention of so great a length of time after the sale, to wit : fifteen years.

41

Fowble *v.* Rayberg and Taylor.

*CASWELL & STARR, for plaintiff:

The first question presented is, was the *vendi. exponas* of September 5, 1810, rightly directed to Goforth after he had gone out of office, and when he was a judge of the very court from which it issued, and could he sell and make a title to the purchaser.

In the first place there was no necessity for the proceeding. It should have been directed to the then sheriff. He was in all respects competent to act under it, and perform its exigency. The possession of the property had not been changed by the levy made by Goforth, as it sometimes is in the case of personal property.

It is admitted that when a sheriff goes out of office, having an execution in his hands, he may finish it, or his deputy may do it for him. For that purpose he was still sheriff, and such is the decision in the case of Jackson *v.* Collins, 7 Cowen, 95. The court say that as to an execution in the sheriff's hands when he goes out of office, he continues sheriff and may act by deputy, though the office of the latter must be considered as expiring with that of the principal. 20 Johns. 64.

If a sheriff had taken goods on execution and returned them on hand for want of buyers and goes out of office, and to complete the sale it be necessary that a *vendi. exponas* issue, it should be directed to the new sheriff. 4 Com. Dig. 237, title Execution. The old sheriff may sell without execution, especially if he have the goods in his possession; but if he neglect to do so, the mode of compelling him is not to issue a *venditioni exponas* directed to him, but a writ of *distringas* directed to the new sheriff, commanding him to distrain on the old sheriff till he sell the goods and pay over the money to the present sheriff; or till he sell the goods and bring the money into court himself. The latter is said to be the most usual mode of proceeding. Biorgh on Executions, 262, 263; Tidd's Prac. 1060; 6 Bac. Abr. 161, title Sheriff; Ld. Raym. 1075; 1 Sal. 233; 2 Dun. N. Y. Practice, 323; 1 Dallas, 312. In 6 Mod. 295, Lord Holt says, that after the sheriff has made his return, "levied on specific goods," the regular mode of proceeding is to issue a *venditioni exponas* *when the sheriff continues in office, but the *distringas* when he has left it, but if he has "levied to the value of the debt," he is bound to sell without further process.

The plain inference from all this, is, that a writ of *venditioni exponas* is never issued but to a person in office, whom the court have

a right to command and who is under an obligation to obey the process.

If a sheriff, having levied upon goods and taken them into his actual possession, should die, and his administrator should refuse to sell or deliver them up, it is possible that under very peculiar circumstances, a *venditioni exponas* might be directed to him, though it is not easily perceived why he can not be distrained upon as well as the intestate. In the case of real estate this can never be necessary, because the possession is never changed by a levy, nor even sale on execution.

It is unnecessary to remark on the evident absurdity in directing an execution to the judge of the court from which it issues.

The practice of the court of common pleas of Hamilton county can hardly make the law of the land, when it is to divest a man of his freehold.

The amended return of December, 1812, which declared the lands not sold or on hand for want of bidders, ought not to have been set aside after the lapse of fifteen years, and the former returned reinstated, nor a deed ordered to be made more that seventeen years after the lands were sold—if sold at all.

In Thompson *v*. Skinner, 9 Johns. 556, the court say, that after the lapse of twenty years no judicial proceedings whatever ought to be set aside for irregularity; and in South Carolina it was so decided after twelve years.   2 Bay, 388.   The most alarming consequences may be anticipated from such a practice.   In this case a *venditioni exponas* was issued in the summer of 1813, and the premises might have been sold to some other person; if not, the judgment had become dormant.   The acquiescence of the parties for the space of fifteen years furnished the strongest reasons for believing that everything in relation to the judgment and sale was arranged.   If it was right to amend the return in December, 1812, it was wrong to vacate that amended return in November, 1827, and the acquiescence of the parties furnishes the best evidence *that it was rightly done.   If the premises were actually [50 sold to Walker, and he paid his money, it is not necessary to decide what would be his remedy; it is sufficient to say that so important a result ought not to be produced by so summary and informal a proceeding.

Neither the act of February 16, 1805, or the act of 1824, authorize the sheriff to make a deed, for lands sold by his prede-.

cessor, unless such predecessor has gone out of office before making such deed. This is really nothing more than an enactment of the common law. If a sheriff sell or set off lands on execution, and die or go out of office before giving a deed or other requisite evidence of the sale, there is no doubt his successor may do it, for the office continues; but in this case Goforth was not in office at the time of the sale. It is, therefore, a case not provided for by the statute, and the common law has no provision for such a proceeding. It may well be doubted whether the authority.of a sheriff to make a deed, under the provision of the act for lands sold by his predecessor, is not confined to the immediate successor of the one making the sale.

If it was too late for Fowble, in 1828, to set aside the execution of 1810, it was also too late to attempt to use it against him by setting aside the amended return of 1812, and confer upon the execution the effect it had in 1810. For the space of fifteen years that execution had remained on file declaring the lands of Fowble not to have been sold by it; and when it was attempted to give to the execution a totally different effect, by declaring his lands sold, it was surely competent for him to gainsay the validity of the execution. If the argument proves that the motion of Fowble to set aside the execution came too late, it also proves that the motion to set aside the amended return came too late.

WADE, for defendant:

The first question made by the plaintiff is, that the *venditioni* of September, 1810, was void, it being issued to A. Goforth, be being out of office, an associate judge or member of the senate at the time.

At the common law, an execution was considered an entire thing, and when once acted upon, as by taking possession of *property, or perhaps advertising it, the person who thus begins must finish it. Mason *v.* Sedam, 2 Johns. Ch. 180. In the case of Ayre *v.* Aden, Croke Jas. 73, the sheriff had levied upon goods on a *fi. fa.* and was discharged from office before sale, but had not returned the writ; subsequently he sold the goods without a *venditioni*, and the question was, whether the sale was good without a *venditioni*. The court decided the sale was good, for the *fi. fa.* gave him authority to sell without another writ, and that his discharge from office did not affect the sale. Bacon, title Execution, 366, old edition; to same point, Bacon, title Sheriff, 466, old edition. If

44

Fowble v. Rayberg and Taylor.

upon a *fi. fa.* the sheriff seizes goods, and returns that goods to such a value remain in his hands, *pro defectu emptorum*, and he is removed, yet he, and not the new sheriff, is to proceed in the execution, for execution being an entire thing, he who begins must end it.   See also 1 Burrows, 34.

Reed *v.* Stevens, Coxe, N. J. 265, the court decide that the executor or administrator of a deceased sheriff may sell lands seized in execution by a deceased sheriff.   Clark *v.* Withers, 6 Mod. 298. The court say executions are favored in law.   By a seizure the property is vested in the sheriff.   The selling is but a formal part of the execution, and by the seizure and writ he has authority to sell.   The *venditioni exponas* adds not to his authority, but is to spur him on to sell.   The goods, by the seizure, are in *custodia legis.*

So it is contended that under our law, by a levy on land, it becomes as much in *custodia legis* as goods and chattels in England.

A second *fi. fa.* can not issue after a seizure; 2 Ld. Raym. 1075; Croke Eliz. 391; and it is contended that a second *levari facias* can not issue in this state, after a levy returned, until the first levy is disposed of by a sale, or be set aside.   An existing levy, I think, would be a good plea in bar to an action brought on a judgment.

Jackson, ex dem. Scofield, *v.* Collins, 3 Cowen, 89.   The court decide that a deputy sheriff may complete an execution by sale and conveyance of land, after the sheriff goes out of office, provided the execution was levied before.   The court say, page 95, the authority of the deputy is limited by the duration of the authority of the principal.   An execution *against the property of a defendant, [52 partly executed by the old sheriff, shall be completed by him, and in relation to such he continues sheriff.

Hempstead *v.* Weed, 20 Johns. 95.   Even in case of a *ca. sa.* upon which a defendant has been arrested and is imprisoned, it is optional with the old sheriff whether he will transfer the prisoner to the new sheriff or retain him in his custody and complete the execution himself.

From the foregoing authorities it clearly appears to be the duty of the old sheriff to complete an execution begun by him.   It is admitted that at the common law the usual process issued to compel him to do so was a *distringas*, but this by no means proves that a *venditioni* was an improper writ.   On the contrary, in Ayres *v.* Aden, the *quære* was, whether a *vendi.* ought not to have issued, clearly recognizing it as a proper writ, when the sheriff had gone

out of office. And the reason why the *distringas* was resorted to at common law, instead of the *vendi.*, was, I presume, that it was in its nature a more efficient writ than a *vendi.* Neither a *vendi.*, or *distringas* gave to the sheriff any new power, though both require him to exercise a power already vested in him by virtue of former writs.

But if the issue of a *venditioni* would have been erroneous at common law, still, as the practice of the courts, in this part of the state, prior to 1824, had invariably been to proceed in this way, it is presumed the court would not now be disposed to disturb it. There being no statutory provisions against it, the maxim that *communis error facit jus*, most forcibly applies. But it is by no means admitted to be an erroneous practice as the law then was.

I can not see how his being an associate judge could prevent his acting as sheriff, to complete executions begun by him while sheriff, nor can I see any absurdity in his doing this.

He was not judge, he was senator when he made the sale; and I am referred to section 26, article 1, of our constitution, on this subject. I do not see its application. If it establishes anything, it is, that he could not be senator while he had executions to complete.

By the statutes on executions of 1805 and 1808 (see Land Laws 338–343), under which this levy and sale was made, there is no provision for the issue of a *vendi.* in any case, so *that, as at the common law, the sheriff acts by virtue of the power vested in him by the first writ of *fi. fa. et lev. fa.*, and the *vendi.* was a mere command, as at common law, to do that which he was before empowered to do. And it is contended that the sheriff might, but for the practice of the court, have sold at any time after levy, without a *vendi.*

The second position assumed is, that the amended return of December, 1812, ought not to have been set aside and the former one reinstated after a lapse of fifteen years; nor should a deed have been ordered after a lapse of seventeen years.

The application made by Walker to strike out the amended return made by Corry, and reinstate the one made by Goforth, was an appeal to the equitable power of the court. Of course they were bound to give such relief as a court of equity would give in similar cases; and I presume it will not be contended by the gentleman, that if Walker had filed a bill showing the same facts that he proved in this case, but that a court of equity would have de-

46

Fowble *v.* Rayberg and Taylor.

creed ·him the land. It is laid down as a general rule in 6 Term 8, and 7 Term, 699, that the court can do whatever the ends of justice require in amending their records,.and the application, so far as it related to the strking out of Corry's amendment and re-instating the other, comes within this rule. I would refer the court to Hart *v.* Reynolds, 3 Cowen, 42, on this subject.

But on principle the court erred in permitting Corry to alter the return made by the sheriff. By his return he had completed the execution in 1810, and even supposing the administrators might have completed the execution had it remained to be done, yet, being completed, he had no power over it. Supposing he pos-sessed the power, yet, as Walker, the purchaser, was not a party to the judgment, he can not be held to be concluded by the act of Corry, unless it was proved that he had notice of the motion. Nothing of this kind was pretended. It is, however, contended that as fifteen years was suffered to elapse, it was too late to move to set the amendment aside, and the case of Thompson *v.* Skinner, 7 Johns. 556, is relied on. There the court say, after a lapse of twenty years no judicial proceeding should be set aside for irregu-larity. I want no other authority to prove us within time for such an application—fifteen years is not *twenty. The gen-  [**54** tleman's reasoning from lapse of time can not apply; here the purchaser made the motion, and it was opposed by the defendant, whose land was sold, not upon any pretense that an arrangement had been made between them, but upon the plea that it was now too late. The authority cited from Bay, 338, I have not seen, but presume that there must have been some peculiar reason for denying the application, after a lapse of only twelve years, as was the case in Wilson *v.* Crompton, Wil. 61, and Wentworth *v.* Staf-ford, Ld. Raym. 68, when the court refused the amendment of judgments, because it would be injurious to purchasers.

On the question, whether the court could order the present sheriff to make the deed, I think there can not be a doubt that he alone was the person to be directed to make it. The statutes of February, 1805, and the statute of 1824, use precisely the same language on this subject, to wit: "It shall be lawful for any suc-ceeding sheriff or other proper officer, on receiving a certificate from the court," etc. Ohio Land Laws, 341, sec. 13; 22 Ohio State Laws, 113, sec. 14. By the expression "any succeeding sheriff," the legislature clearly meant, not to confine the making of

a deed to the immediate successor of the one who made the sale, but to give the power to any successor, whether immediate or remote. And such I believe has been the uniform practice of the courts.

The statute of 1808 repealed sections 10 and 11 of the law of 1805, which provides for the extent of lands, if they will pay the debt in seven years. The judgment in this case was had after the law of 1808 came in force, which is an answer to the exceptions on this subject.

The fourth position assumed by the gentleman is not true, in point of fact. The court did not refuse to set aside the execution of 1810, because the application was made too late, but because they deemed the proceedings regular, and in conformity to the practice of the court. They did refuse to hear the motion made by Fowble, to set aside the proceedings had upon Walker's motion, and upon the principle that the party was present in court, had notice of the motion, and did not resist it until after the order was made. This was a matter resting in the sound discretion of the court, which *they had a right to grant or not, as they thought proper; and it is believed can not be made the subject of revision on a writ of error.

In the exceptions it is said to be a case not provided for by statute, to make a deed where a sheriff sells land after his office expires.

By section 13 of the law of 1805, it is provided that if a sheriff, or other proper officer, hath made or shall make a sale of lands, etc., and the language of the statute of 1824 is of the same import.

If the court should decide it to have been proper and regular for a sheriff out of office to sell upon execution begun by him, then it would irresistibly follow that the statutes provide for the case, and that the order made by the court, upon the application of Walker, is proper—for the words of the statute of 1805 do not confine it to sales made while in office, but to such as are made by proper authority.

Opinion of the court, by Judge HITCHCOCK:

Previous to the act of 1824, "defining the duties of sheriffs and coroners in certain cases," it was a point frequently mooted among the members of the bar in this state, whether a sheriff, after the expiration of his office, could do any official act; although I am

48

not aware that the question was ever submitted to or decided by any of our courts. 6 Bac. 161. In England it seems to have been considered that a sheriff, having levied upon goods and going out of office, might proceed to sell under a *vendi.;* and if the sheriff returned on the *fi. fa.* that he had seized goods of the value of the debt, and actually paid part of the debt after his term of office expires, he might sell without a *vendi.* If he neglected, a *distringas* issued to compel him to sell and bring in the money, or to compel him to sell and deliver the money to the new sheriff to bring into court.

But although a *vendi.* might issue to a sheriff after he was out of office, the *fi. fa.* having been levied by him while in office, still I apprehend this practice was not uniform. By section 9 of the statute of 3d George I., chap. 15, provision is made for settling the fees or poundage between a preceding and subsequent sheriff, where the *fi. fa.* is levied by the one *and the *vendi.* issued [56. by the other. 6 Bac. 161. It is true this refers to process out of the exchequer.

As lands in England are not subject to sale on execution, we cannot expect to find in the reports of that country any decided case precisely in point, although there may be those which are somewhat analogous. There is a difference as to the effects of a levy upon goods and upon lands. Goods when levied upon are taken, or ought to be taken into the possession of the sheriff, and so far become his property that he may maintain an action if they are taken from him. If of sufficient value to satisfy the debt, and, if lost through his carelessness, he will be liable to the creditor, and may be made to pay the debt. The land, however, remains in the possession of the defendant, and in that possession he can not be disturbed until it is sold. Nor could the officer be called upon to pay the debt until that event had taken place. For these reasons there would seem to be more propriety in directing the *vendi.* to the new sheriff where the *fi. fa.* was levied upon lands than where it was levied upon goods. The goods might be retained, or may have been lost by the old sheriff, and thus never have come to the possession of the new one, while the lands would remain in *statu quo.* Still, if the execution be " an entire " thing, and that it is we have no disposition now to controvert, we can see no serious objection to adopting the rule that " he who begins shall end it," as well where lands as where goods are to be sold. At any rate, we must

say that the English authorities, so far as they are analogous, seem to favor this practice. Such practice prevails in New York. In that state it has been decided that a deputy sheriff may complete a sale and make a deed after the principal is out of office, provided the levy was made before.    3 Com. 89.

In this state there was no express statutory provision upon the subject until 1824.   We have endeavored to ascertain the practice before that time, for after all I can not but consider it a mere question of practice.   So far as respects the interests of the judgment debtor, if his property must be sold on execution to satisfy the judgment, it is pretty much material whether it is sold by one sheriff or another.   Either would be anxious to get for it all it would bring, and if it be real estate it can not, at any rate, accord-

57]    ing to our policy, *be sold for less than two-thirds of the appraised value.   It was the practice of the general court of the territory to issue the *vendi.* to the officer who made the levy, and that practice was continued, in Hamilton county at least, under the state government.   In that county, which is the most populous in the state, and in which the general court did more business than in any other, this course was invariably pursued, as appears from the case under consideration, until the act of 1824.   Into how many counties this practice, after the organization of the state government, extended, we know not, but we do know that in some other parts of the state it was different.   Probably in most of the counties the *vendi.* was directed to the sheriff in office at the time of the date of the writ.   Neither course is without authority to support it.   It is certain that a practice pursued in any one county for a great length of time does not make it legal.   But where it has prevailed for more than thirty years, as is the case with the one under consideration, in the county of Hamilton, this court will not be disposed to interfere with it, unless it palpably violates some well-established rule of law.   The mischief that would result from adopting a different course can not be foreseen.   That it would be extremely great can not be doubted.

Although previous to 1824 there was no express enactment upon this subject, still there might have been other statutes bearing upon it.   The several laws "regulating executions," and "regulating judgments and executions," seem to be of this character. From the enactment of the law of January 19, 1802, " regulating executions," to the present time, a principle has been contained in

our statutes authorizing the successor of a sheriff, or other officer who had sold lands and was incapable of making a deed, to make a deed under the order of the court from which the execution issued, and providing that the deed thus made should be equally valid, as if made by the officer who made the sale. The law of January 19, 1802, was enacted by the general assembly of the territory, at which time the general court was the highest judicial tribunal of the country. It has already been remarked, that the practice of that court was to issue the *vendi.* to the same officer who made the levy. Ohio L. L. 334. Section 12 of this statute provides, " that if the sheriff, or other officer, who hath made or shall make sale of lands, tenements, *or real estate, by virtue of an execution [58 against the same, shall abscond, or be rendered unable, by death or otherwise, to make a deed for the same, it shall be lawful for any succeeding sheriff, or other officer of the county," etc., to make a deed, under the direction of the court from which the execution issued, the other provisions of the same section being complied with. This act, however, says nothing as to what officer the *vendi.* shall be directed. It does not interfere with the then existing practice of the court in this respect. This same principle is re-enacted in section 13 of the law," regulating judgments and executions," passed by the state legislature, February 16, 1805, and, with but one exception, is precisely in the same words. It is again introduced into the act upon the same subject, of January 25, 1810, and of which act it constitutes section 16. Ohio L. L. 348. It is again introduced as section 17 of the act " regulating judgments and executions," enacted January 31, 1816. 16 Stat. Laws, 170. It constitutes section 2 of the act of February 24, 1820, upon the same subject. 18 Stat. Laws, 188. In all the different statutes there is no material variation in the mode of expression. In all of them the provision is, " that if the sheriff or other officer," etc., " shall abscond, or be rendered unable, by death or otherwise, to make a deed," etc. On February 1, 1822, the legislature enacted a new law upon the subject of "judgments and executions," in section 13 of which we find the same, or a similar provision, authorizing a " successor" to make deed. 20 Stat. Laws, 68. But there is a change in the phraseology as to the contingency upon which it may be done. This provides " that if the term of service of the sheriff or other officer, who hath made or shall make sale," etc., " shall expire, or if the said sheriff or other officer shall abscond,

or be rendered unable by death or otherwise to make a deed," etc., then the deed may be made by a "succeeding sheriff," etc. In the previous statutes it was made necessary to make an application to the court for an order upon "the successor" to make a deed where the officer making the sale had absconded, or where he was unable to make it. Under this statute it was necessary to do it, where "the term of service" of the officer making the sale had expired. Now, I can see no more impropriety in permitting a 59] *sheriff who has sold land upon execution, to make a deed of conveyance after his term of service has expired, than in permitting him to sell on *vendi.* or otherwise under similar circumstances, and it would seem to me that, under the statute of 1822, it would have been most proper to issue the *vendi.* to the sheriff in office on the day of its date. Whether this would be absolutely necessary I do not undertake to say. This statute, however, has nothing to do with the present case. The land was sold under the law of 1810. These statutes are referred to merely for the purpose of showing that up to the year 1822, the legislature in their frequent legislation upon the subject of executions, have said nothing which would lead to uniform practice in the direction of writs of *vendi.* It was left to the discretion of the courts. And, even after the statute of 1812 above referred to, the practice continued the same as before, different in different parts of the state. To remedy this evil, the legislature, in enacting the law "defining the duties of sheriffs," etc., passed February 25, 1824, provided, among other things, in section 8, that "no *venditioni exponas* shall hereafter be directed to, or executed by, any sheriff whose term of office may have expired," etc. Since that law the practice has been uniform throughout the state; before it was variant. From all the consideration we have given the subject, we are not prepared to say that the *vendi.* of the 5th of September was improperly issued, in being directed to the late sheriff, or that it was improperly executed, in being executed by the officer to whom it was directed.

The question next to be considered is, whether the court of common pleas erred in setting aside and vacating the amended return. It does not seem to be controverted that a sheriff or other officer may, by leave of the court, amend his return? Nothing is more common in practice, and no injury is thereby done to the parties litigant, so long as the return, when amended, is consistent with truth. If a false return is made, the party injured has

Fowble v. Rayberg and Taylor.

a remedy by action. The order of the court of common pleas vacating the amended return, in the present instance, is complained of, not so much because such order was made, but because it was made after so great a length of time had elapsed. Although the order was to set aside and vacate an amended return, or *more properly speaking, to vacate an order previously made [60 by the same court, thereby reinstating the return originally made by the officer executing the process, still I do not perceive that it materially varies from ordinary amendments of returns.

I know of no law fixing upon any length of time as an absolute bar to motions for leave to make such amendments. The amendment may be made after the term of office has expired. 6 Bac. 160. In the state of New York it has been decided that after a lapse of twenty years, no judicial proceedings whatever ought to be set aside for irregularity. 7 Johns. 556. In South Carolina it has been said that it would be dangerous to set aside such proceedings twelve years after judgment. 1 Bay, 338. Which of these rules shall we adopt? If we take the New York rule, then the motion was made and the vacating order entered within time; if the South Carolina rule, then it was not within time. The opinions of the courts of other states are entitled to much consideration, and will, I trust, by this court, always be treated with respect. But before they can be received as conclusive upon us upon a question of practice, there must be a conformity of decision in the courts of the different states whose practice is referred to. Now the decisions above referred to, and they are cited by the counsel for the plaintiff, do not show this uniformity. Motions to set aside any judicial proceeding, or to amend any return, should undoubtedly be made within reasonable time. In New York, if it be done within twenty years it is well; but in South Carolina, it must be done within twelve. The inference I draw from this diversity is, that there is no positive rule of law upon the subject. Much, nay everything, must be left to the sound discretion of the court. A court should unquestionably be more cautious in permitting an amendment, after a great lapse of time, than where the transactions are fresh, and the circumstances may be supposed to be more fully within the recollection of the officer making the amendment. It can not but be seen, however, that the present case is somewhat peculiar in its circumstances. The sheriff had returned that he had sold the land and made the money. This return remained

upon the execution during his lifetime, but after his death it was amended at the suggestion of his administrators. *If the court were satisfied that the order for this amendment was improperly made, it was within their discretion to vacate it, thereby leaving the return upon the execution as it was left by the officer to whom it was directed, and by whom it was executed. The question now to be considered, is not whether this court, under similar circumstances, would have done as was done by the court of common pleas, but whether that court, in the exercise of their discretionary power upon this subject, have violated any principle of law. We do not perceive that they have.

It is further alleged, that the court erred in ordering a deed, after the lapse of fifteen years from the time of the sale.

The law "regulating executions," passed January 19, 1802, and which has already been referred to, provided that if any sheriff or other officer, having sold land, should "abscond, or be rendered unable, by death or otherwise, to make a deed of conveyance for the same," etc., then "the successor" of such sheriff or other officer might, under the order of the court from which the execution issued, make a deed to the purchaser, which should, to all intents, be equally valid as if made by the officer making the sale. The same principle has been contained in all the statutes upon the same subject, and there has been no less than seven of them, besides amendatory acts, from that time to the present. In the present case the execution was issued from the court of common pleas. It was proven, to the satisfaction of that court, that sale was "fairly and legally made," and that the vendee "had paid the purchase money." The fact, that the purchase money had been paid, constituted, on the part of Walker, a strong equitable claim, and the proof introduced was such as, in contemplation of the statute, would require of the court, in ordinary cases, to make the order. It certainly is not a little extraordinary that the business should have rested for so great a length of time. Nothing seems to have been done in it from 1812 to 1827. This circumstance would undoubtedly make the court more astute in the examination of the testimony; still, as the statute makes no provision as to the time within which the order shall be made, we can not say that this circumstance, of itself, would be sufficient to render the order, when made, illegal.

*It has been urged in argument, that the deed thus to be

54

made should be made by the *immediate* successor of the officer
making sale.   But is this a fair construction of the statutes on the
subject?   To the court it would seem that it is not.   It is true
that all the statutes "regulating executions," up to the year 1822,
speak of "the *successor*" as the person who shall make the deed in
case the officer making the sale shall be unable to make it.   The
definite article, "*the*" being made use of, perhaps the strict gram-
matical construction would confine the power of making deeds to
the immediate successor of the officer making the sale.   Courts,
however, do not seek principally for grammatical construction in
ascertaining the meaning of statutes.   It is their duty to carry
into effect the intention of the enacting power, although, in so
doing, the rules of grammar may be violated.   To arrive at this
intention, perhaps there is no rule of more general application
than this: to " consider the old law, the mischief, and the remedy."
Suppose we apply this rule to the statute of January 19, 1822.   I
speak of this statute, because it is the first in our statute books
which authorizes "*the successor*" to make deeds where his prede-
cessor had made sale, and because since that time there has been
no change upon the subject, certainly not before 1822.   What then
was the old law when this statute was enacted?   The officer who
made the sale must make the deed.   What was the mischief?   The
officer who made the sale might "abscond, or be rendered unable,
by death or otherwise," to make the deed; consequently the pur-
chaser must lose the benefit of the purchase, and if the purchase
money had been paid, must also lose the purchase money.   What
is the remedy?   In case of the inability of the officer who made
the sale to make the deed, any individual, who may subsequently
hold the same office, may, under the direction of the court from
which the execution issued, make the necessary deed and convey-
ance, which shall have the same effect, "to all intents," as if made
by the officer making the sale.   Adopt the construction contended
for by the plaintiff's counsel and the mischief resulting from the
old law would be but partially remedied.   The *immediate* "succes-
sor " of the officer making the sale, might, as well as his prede-
cessor, be "rendered unable, by death or otherwise," to make a
deed.   He *might, in fact, vacate his office before a term of  [63
the court from which the execution issued should intervene, in
which the necessary order could be made.   The intention of the
legislature must have been to secure to the purchaser the benefit

of his purchase; and this intention could not, in every case, be car-ried into effect were the construction insisted upon by the counsel for the plaintiff to prevail.   However it might have been under the laws previous to 1822, the act of the 1st February of that year, "regulating judgments and executions," places the question beyond a doubt.   Section 13 of that act provides, that if the officer making the sale shall be incapable of making a deed, then "it shall be lawful for *any* succeeding sheriff or other officer to do it.   20 Stat. Laws, 74.   The same phraseology is used in the statute of February 4, 1824 (22 Stat. Laws, 113), under which statute the deed in the present case was ordered.

It has been further urged, that the *vendi.*, and the proceedings under the same, were irregular, inasmuch as there was no indorse-ment of *nulla bona* upon the writ of *fi. fa.*   Had this been the fact, a difficult question might have been presented.   But we are satis-fied, from a careful examination of the record in this case, no question is presented as to the necessity of such indorsement. Counsel have been led into an error by confounding the case of Fowble *v.* Walker, decided at the present special session, with this case.   In that case, it is true, it was proposed to show that there was no indorsement of *nulla bona*, but the court of common pleas rejected the evidence, as coming in at too late a period.   In the present case, it does not appear whether such indorsement was or was not made.

Upon the whole, we are not prepared to say that there is any-thing erroneous in the decision of the court of common pleas; the same must therefore be affirmed.